UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
NAVAERA SCIENCES, LLC, et ano.,

                Plaintiffs,

              -against-                                09 Civ. 3791 (LAK)

ACUITY FORENSIC INC., et ano.,

                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OPINION

        Appearances:

                Christopher P. Corval

                Christopher Devanny
                KENT & MCBRIDE

                *Attorneys for Plaintiffs*

                Leslie Mark Greenbaum
                GROSS, SHUMAN, BRIZDLE & GILFILLAN, P.C.

                *Attorney for Defendants*

LEWIS A. KAPLAN, *District Judge*.

        This is an action for alleged breach of a software sales agreement and misappropriation of plaintiffs' trade secrets.  Defendants move to dismiss the complaint on a variety of theories, including for lack of subject matter jurisdiction and personal jurisdiction.

*Facts*

Plaintiffs, Navaera Sciences, LLC and Navaera Consulting, LLC (collectively, "Navaera"), are companies located in and organized under the laws of New York.  Navaera is the originator of a software package that financial institutions use to comply with anti-money laundering laws.[1]  It markets its software to Canadian financial institutions[2] and claims that its marketing methods for and pricing of that software are trade secrets.[3]

In 2007, Navaera entered into negotiations with Acuity Forensic Inc. ("Acuity"), a corporation organized under the laws of Canada with its principal place of business in Ontario, to promote and market Navaera's products and services to customers in Canada.[4]  Acuity neither owns real property in New York nor derives any revenue from goods consumed or services rendered there.[5]  Acuity's principal, sole employee, and sole shareholder is Matthew McGuire, a Canadian domiciliary.[6]  On August 14, 2007, McGuire attended a meeting at Navaera's New York office, where he viewed a demonstration of Navaera's software and discussed "the elements" of a potential

---

[1]  Amend. Cpt. [DI 5] ¶ 17.

[2]  *Id.*

[3]  *Id.* ¶ 18.

[4]  *Id.* ¶ 2.

[5]  McGuire Aff. [DI 14] ¶ 3.

[6]  Amend. Cpt. ¶¶ 12-13; Adler Aff. [DI 16] ¶ 9.

business relationship between Acuity and Navaera.[7]  McGuire did not thereafter return to New York.[8]

On October 4, 2007, Navaera and Acuity entered into an agreement entitled "Independent Contractor Agreement - Sales"[9] whereby Acuity agreed to be an "independent seller" of Navaera's services and products to customers in Canada in exchange for a commission it received from Navaera.[10]  McGuire signed the agreement in Canada on behalf of Acuity.[11]  Acuity did not provide any services or sell any goods in New York pursuant to that agreement.[12]

The agreement provided that it was to be "interpreted, construed and enforced in accordance with the laws of the State of New York (without regard to principles of conflicts of laws)."[13]  It was terminable at will by either party and contained a "non-competition/non-solicitation"

---

[7]     Adler Aff. ¶ 10.  Adler asserts also that McGuire visited New York on other occasions in connection with "other business relationships," including his employment for Deloitte Canada and proposal to "service a major New York financial institution." *See id.* ¶¶ 9, 11, 22-24.  Any such contacts, however, would not be relevant to this action because they would be unrelated to Navaera's claims.  *See infra* DISCUSSION PART I.B.

[8]     McGuire Reply Aff. [DI 17] ¶ 6.

[9]     Adler Aff. ¶ 5.

[10]    *See* McGuire Aff. ¶¶ 2, 36.

[11]    *Id.* ¶¶ 2, 5.

[12]    *Id.* ¶¶ 2-3.

[13]    McGuire Aff. Ex. I(A), ¶ 9.

4

provision.[14]   In addition, Acuity was bound to send to Navaera's New York office any notice

required under the agreement.[15]   During the course of the parties' contractual relationship, Acuity

and McGuire made telephone calls to Navaera's employees and sent emails, faxes, and documents

by mail to Navaera's New York office.[16]

On April 2, 2009, McGuire terminated the agreement in accordance with its terms

by sending notice to Navaera in New York.[17]

Navaera brings this action for damages and injunctive relief for breach of contract,

tortious interference with contract, and misappropriation of trade secrets.  It claims that defendants

breached the non-competition clause of the agreement by promoting its competitors' software to

customers.[18]   It contends also that defendants misappropriated Navaera's trade secrets by providing

Navaera's software to Navaera's competitors, Verafin and Truth Technologies.[19]   In addition,

Navaera asserts a claim under the New York General Business Law for deceptive commercial

practices[20] and seeks a declaration that it does not owe unpaid commissions to Acuity.  The

---

[14]

*Id.* Ex. I(A), ¶¶ 3, 5.

[15]

McGuire Aff. Ex. I(A), ¶ 7.

[16]

*Id.* ¶¶ 12-15.

[17]

*Id.* ¶ 14.

[18]

*Id.* ¶¶ 20, 37-40.

[19]

*Id.*

[20]

*See* N.Y. Gen. Bus. L. §§ 349-50.

5

complaint alleges that the amount in controversy exceeds $75,000.[21]

This action is before the Court on the defendants' motion to dismiss for lack of subject matter jurisdiction and personal jurisdiction, improper venue, and failure to state claims for *alter ego* liability, tortious interference, and deceptive practices under the New York General Business Law.

*Discussion*

I.      *Subject Matter Jurisdiction*

At the outset, the Court must address defendants' contention that the complaint should be dismissed for lack of subject matter jurisdiction because it fails to allege the requisite matter in controversy.[22]

The basis for jurisdiction expressly relied upon in the complaint is 28 U.S.C. 1332(a), which confers original jurisdiction on the federal district courts with respect to "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of a State and citizens or subjects of a foreign state."[23]

Defendants maintain that Navaera cannot satisfy the amount in controversy

---

[21]

Amend. Cpt. ¶ 14.

[22]

*See, e.g.*, *Amalgamated Cotton Garment & Allied Indus. Ret. Fund v. Youngworld Stores Group, Inc.*, 2001 WL 314650, at *2 (S.D.N.Y. Mar. 30, 2001) ("[T]he court will consider a 12(b)(1) motion before ruling on any other motions to dismiss, since dismissal of an action for lack of subject matter jurisdiction will render all other accompanying defenses and motions moot.") (citing *United States* ex rel *Kreindler & Kreindler v. United Techs. Corp.*, 985 F.2d 1148, 1155-56 (2d Cir. 1993)).

[23]

*See* 28 U.S.C. 1332(a).

requirement.  According to defendants, Navaera's causes of action sounding in breach of contract and tortious interference are "valueless" because the alleged breach occurred after the parties' agreement purportedly was terminated at will.[24]  Defendants reason that plaintiffs may recover only $35,910, the value of Navaera's remaining claim for a declaratory judgment concerning outstanding commissions payable to defendants.[25]

In this Circuit, a party invoking diversity jurisdiction has the burden of proving a "reasonable probability" that the claim is in excess of the jurisdictional amount.[26]  As our Circuit has put it, however, that burden is "hardly onerous" because there is  "a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy."[27]  To overcome that burden, the party opposing jurisdiction must demonstrate "to a legal certainty" that the amount recoverable does not meet the statutory threshold.[28]  In other words, it must demonstrate that "[t]he legal impossibility of recovery must be so certain as virtually to negative the plaintiff's good faith in asserting the claim."[29]  Indeed, even if it appears highly unlikely that plaintiffs could

---

[24]

Def. Br. [DI 16] at 10.

[25]

Id. at 6.

[26]

Scherer v. Equitable Life Assurance Soc'y of the United States, 347 F.3d 394, 397 (2d. Cir 2003) (quoting Tongkook Amer., Inc. v. Shipton Sportswear Co., 14 F.3d 781, 784 (2d Cir. 1994)).

[27]

Id. (citing Worlde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc., 166 F.3d 59, 63 (2d Cir. 1999)).

[28]

Id. (quoting St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288-89 (1938)).

[29]

Id. (citing Chase Manhattan Bank, N.A. v. Am. Nat. Bank & Trust Co. of Chicago, 93 F.3d 1064, 1070-71 (2d Cir. 1996)).

recover compensatory damages remotely approaching $75,000, dismissal for failure to allege the requisite jurisdictional amount would be improper.[30]  In addition, the existence of defenses to the claim which, if valid, would preclude recovery of the jurisdictional amount does not affect jurisdiction because they do not go to the presence of a claim of the required size.[31]

Defendants, however, have not demonstrated "to a legal certainty" that the value of Navaera's claims is less than $75,000.  Contrary to defendants' contention, the disputed commissions are not the sole damages plaintiffs seek to recover in this action.  Further, defendants may not assert defenses on the merits to "whittle down" the amount in controversy.[32]

In consequence, defendants' motion, insofar as it seeks dismissal for lack of subject matter jurisdiction, is denied.

## II.    *Personal Jurisdiction*

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing jurisdiction.  The applicable standard depends upon the procedural context in which the jurisdictional challenge is raised.[33]  Where no discovery has taken place, the plaintiff need make only a *prima facie* showing of jurisdiction "by pleading in good faith, . . . legally sufficient allegations of

---

[30]

Id. (citing *Zacharia v. Harbor Island Spa, Inc.*, 684 F.2d 199, 202 (2d Cir. 1982)).

[31]

Id. (citing *Zacharia*, 684 F.2d at 202).

[32]

*Id*.

[33]

*Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990), *cert. denied,* 498 U.S. 854 (1990).

8

jurisdiction."[34]  If, as is the case here, affidavits are submitted, the Court is to resolve factual disputes in the plaintiff's favor.[35]

Analysis of personal jurisdiction requires a two-step inquiry.   A court first must determine whether the law of the state in which the action was commenced would permit the exercise of personal jurisdiction by courts of general jurisdiction in that state.  The court then must determine whether the exercise of jurisdiction in such a case would be permissible under the Due Process Clause of the Fourteenth Amendment.[36]  The Court assesses personal jurisdiction as to each defendant separately.

A.    *Acuity*

Navaera maintains that the complaint sufficiently alleges personal jurisdiction over Acuity under the "transacting business" clause of the New York long arm statute, CPLR § 302(a), subd. 1.  The long arm statute authorizes the exercise of jurisdiction over a non-domiciliary only "[a]s to a cause of action arising from any of the acts enumerated" therein, including the transaction of business within the state.[37]

---

[34]

*Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir. 1998) (quoting *Ball*, 902 F.2d at 197) (internal quotations marks omitted); *accord In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003).

[35]

*See Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001); *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993).

[36]

*See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 124 (2d Cir. 2002); FED. R. CIV. P. 4(k)(1)(A).

[37]

N.Y. CPLR § 302(a), subd. 1.

"Transacting business" under the long arm statute "has been interpreted to require a certain quality, rather than a specific quantity, of contacts with New York."[38]  A non-domiciliary is said to transact business if it purposefully avails itself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws.[39]  The existence of purposeful activity is determined in the totality of the circumstances.[40] As the New York Court of Appeals has stated, "defendants, as a rule, should be subject to suit where they are normally found . . . . Only in rare case should they be compelled to answer suit in a jurisdiction with which they have the barest of contact."[41]

In our Circuit, the following factors are considered in determining whether an out-of-state defendant "transacts business" in New York: (1) whether the defendant has an ongoing contractual relationship with a New York corporation; (2) whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding this relationship; (3) what the choice-of-law clause is in any such contract; and (4) whether the contract requires franchisees to send notices and payments into the forum state or subjects them to

---

[38]
> *Broad Horizons, Inc v. Central Crude Ltd.*, No. 94 Civ. 1593, 1994 WL 623075, at *2 (S.D.N.Y. Nov. 9, 1994).

[39]
> *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986) (citing *McKee Elec. Co. v. Rauland-Borg Corp.*, 20 N.Y.2d 377, 382, 283 N.Y.S.2d 34, 38 (1967)).

[40]
> *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 23 (2d Cir. 2004) (citing *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 23, 29 (2d. Cir. 1996)).

[41]
> *McKee Elec. Co.*, 20 N.Y.2d at 381-82, 283 N.Y.S.2d at 38.

10

supervision by the corporation in the forum state.[42]  No single factor is dispositive, and other factors may be considered.[43]

Navaera has spent time and ink explaining its development and maintenance of intellectual property and its execution of the Acuity sales agreement in New York.[44]  That exercise is bootless, however, because a plaintiff's unilateral activities cannot support a finding of personal jurisdiction over a defendant.[45]  The Court's inquiry centers instead on defendants' activities in New York.[46]

In arguing in favor of personal jurisdiction, Navaera stresses that Acuity entered into an ongoing contractual relationship with a New York-based company.   Nevertheless, the mere fact that an out-of-state defendant enters into a contract with a company headquartered in New York does not establish the requisite minimum contacts unless that contract "projects [the defendant] into the New York market."[47]  Here Navaera does not dispute that Acuity performed the contract and was

---

[42]

    *Sunward Elecs.*, 362 F.3d at 22-23.

[43]

    *Id.* at 23.

[44]

    *See, e.g.*, Amend. Cpt. ¶¶ 16-21; Adler Aff. ¶ 18.

[45]

    *Marble Tile Imports v. Mihelich & Assocs., Inc.*, No. 92 Civ. 1934, 1993 WL 177805, at *2 (S.D.N.Y. May 19, 1993).

[46]

    *Int'l Customs Assocs., Inc. v. Ford Motor Co.*, 893 F. Supp. 1251, 1262 (S.D.N.Y. 1995).

[47]

    *Spencer Trask Ventures, Inc. v. Archos S.A.*, No. 01 Civ. 1169, 2002 WL 417192, at *4 (S.D.N.Y. Mar. 18, 2002) (citing *PaineWebber Inc. v. Westgate Group, Inc.*, 748 F. Supp. 115 (S.D.N.Y. 1990)).

paid solely in Canada, not in New York.[48]

Navaera underscores also the contractual choice-of-law clause, which provides that the parties' agreement is governed by New York law.[49]  A choice-of-law provision is a "significant factor" in assessing personal jurisdiction because it is evidence of a party's intent to invoke the benefits and protections of New York law.[50]  That clause alone, however, is insufficient to confer personal jurisdiction over a non-domiciliary.[51]

Moreover, Navaera asserts in its affidavit that defendants "personally traveled to my offices in New York City on multiple occasions in furtherance of this, and other business relationships."[52] A defendant's visits to or negotiations within New York, however, may sustain a finding of personal jurisdiction only if they are "substantial" and lead to the execution of a contract.[53] In addition, such contacts are relevant to the jurisdictional analysis only if there is a "substantial

---

[48]

See McGuire Aff. ¶ 8.

[49]

Alder Aff. ¶ 7.

[50]

Sunward Elecs., 362 F.3d at 23 (citing CutCo, 806 F.2d at 367).

[51]

See Galgay v. Bulletin Co., Inc., 504 F.2d 1062, 1065-66 (2d Cir. 1974) (dismissing action for lack of personal jurisdiction, notwithstanding New York choice of law clause in parties' contract); Berkshire Capital Group, LLC v. Palmet Ventures, LLC, 06 Civ. 13009, 2007 US Dist. LEXIS 69987, at *10 (S.D.N.Y. Sept. 21, 2007) (same); Int'l Customs Assocs., 893 F Supp. at 1260-61 (same).

[52]

Adler Aff. ¶ 9.

[53]

See Lehigh Valley Indus., Inc. v. Birenbaum, 627 F.2d 87, 91 (2d Cir. 1975); see also C-Life Group Ltd. v. Generra Co., 235 A.D.2d 267, 267, 652 N.Y.S.2d 41, 41 (1st Dep't 1997) (holding that an initial meeting in New York "leading to nothing more than a proposal that was itself the subject of further negotiations over the phone, by mail, and in meetings outside New York" was insufficient to establish personal jurisdiction).

nexus" between those contacts and the plaintiff's cause of action.[54]

Navaera enumerates only a single visit by defendants bearing any relationship to its causes of action. The parties agree that defendants met with Navaera in August 2007, three months before the parties executed the sales agreement.[55] Navaera asserts that McGuire, on behalf of Acuity, then attended a meeting at Navaera's New York office to view a demonstration of Navaera's software and discuss "the elements of what would become the parties' business relationship."[56] Navaera, however, does not maintain that Acuity negotiated the agreement or agreed to any of its terms in New York.[57] Nor does it dispute defendants' assertion that Acuity "concluded and executed" the agreement in Canada.[58] Acuity did not return to New York after the August 2007 meeting.[59]

Navaera emphasizes also the agreement's requirement that Acuity send contractual notices, such as the termination notice, to Navaera's headquarters in New York.[60] In our Circuit,

---

[54]

See *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 165 (2d Cir. 2005); *McGowan v. Smith*, 52 N.Y.2d 268, 272, 437 N.Y.S.2d 643 (1981) (holding that an "articulable nexus between the business transacted and the cause of action sued upon" is essential).

[55]

*Compare* McGuire Aff. ¶ 8 *with* Adler Aff. ¶ 10.

[56]

Adler Aff. ¶ 10.

[57]

Defendants assert that all negotiations of the agreement occurred while defendants were in Canada. *See* McGuire Reply Aff. ¶ 12.

[58]

*Compare* McGuire Aff. ¶ 8 *with* Adler Aff. ¶¶ 6-10.

[59]

McGuire Reply Aff. ¶ 6.

[60]

*See* Adler Aff. ¶ 21.

such notices are relevant in assessing personal jurisdiction in connection with a franchise agreement.[61]  In my view, however, the justification for considering such notices as a distinct factor in the jurisdictional analysis is tenuous.  That a contract between an out-of-state party and a New York entity requires that notification be sent to New York is merely a function of that party's contracting with a New York entity, the first factor in our Circuit's analysis.  The complaint nevertheless does not allege that Acuity is Navaera's franchisee or subject to Navaera's ongoing supervision.  Further, the agreement did not require that Acuity send any payments to Navaera's New York headquarters.  It provided instead that Navaera pay commissions to Acuity in Canada for Acuity's services there.[62]

On the other hand, that the agreement was performed outside of New York is of "great[] significance."[63]  Acuity, which neither solicits business in New York nor derives any revenue from goods consumed or services rendered there, promoted Navaera's services and products to customers in Canada only.[64]  It likewise executed the agreement in Canada and thereafter did not return to New York.[65]  Although Navaera asserts that Acuity regularly communicated with Navaera in New York by telephone, email, and mail, such communications are insufficient to establish

---

[61]

      *See Sunward Elecs.*, 362 F.3d at 22-23.

[62]

      See McGuire Aff. Ex. I(A), ¶¶ 2, 7.

[63]

      *Lehigh Valley*, 627 F.2d at 91.

[64]

      McGuire Aff. ¶ 3; McGuire Reply Aff. ¶ 6.

[65]

      Id. ¶ 8.

14

personal jurisdiction.[66]

Navaera's reliance on *Sunward Electronics Inc. v. McDonald*[67] is unavailing.  The Second Circuit there held that out-of-state defendants, whose contract with the plaintiff contained a New York choice-of-law clause and required that notifications and royalty payments be sent to the plaintiff's New York headquarters, were subject to personal jurisdiction in New York.[68]  The decision, however, rested on a finding that the defendants had purchased from New York through the plaintiff "a substantial amount of supplies . . . [which] alone may be sufficient to confer jurisdiction."[69]  The Circuit emphasized also that the plaintiff had provided training materials to the defendants, supervised their advertising efforts, and partially subsidized their advertising costs.[70] Acuity's contacts with New York are not analogous.

*CutCo Industries, Inc. v. Naughton*,[71] which Navaera cites also, similarly is distinguishable.  There the out-of-state defendant met with the plaintiff at its New York headquarters on three separate occasions and executed a series of franchise agreements providing that any dispute

---

[66]
> *See Int'l Customs Assocs.*, 893 F. Supp. at 1261; *Broad Horizons*, 1994 WL 623075, at *3 (holding no personal jurisdiction where "[t]he 'center of gravity' of the transaction is the development of land in Canada and not a business relationship formed with a New York company through phone and mail contact from Canada"); *Marble Tile Imports*, 1993 WL 177805, at *2.

[67]
> 362 F.3d 17 (2d Cir. 2004).

[68]
> *Id.* at 23.

[69]
> *Id.*

[70]
> *Id.*

[71]
> 806 F.2d 361 (2d Cir. 1986).

arising under them would be governed by New York law and that any arbitrable dispute would be arbitrated in New York.[72]  Defendant consented also to the jurisdiction of the New York courts over the enforcement or confirmation of any award rendered by an arbitrator.[73]  In addition, the franchise agreements subjected the defendant to the plaintiff's "ongoing supervision" and required the defendant's "constant communication" with the plaintiff, its New York-based franchisor.[74]

Acuity by contrast lacks such ongoing and continuous contacts with New York.  Here Acuity's obligation was to promote Navaera's products to customers in Canada.  With the exception of the parties' initial August 14, 2007 meeting in New York, Acuity negotiated, executed, and performed the agreement in Canada.  That single meeting and the contractual choice-of-law and notification provisions are not sufficient to subject Acuity to personal jurisdiction in New York because Acuity did not project itself into the New York market or purposefully avail itself of the privilege of doing business in New York.

In consequence, Navaera has failed to make a *prima facie* showing of personal jurisdiction over Acuity in the totality of the circumstances.[75]

---

[72]

*Id.* at 364.

[73]

*Id.*

[74]

*Id.* at 364, 368; *see also Agency Rent A Car*, 98 F.3d at 30 (finding personal jurisdiction over licensee based on, among other things, "constant business" with New York licensor "for decades, including the continuous transmission of payments and reports to New York").

[75]

It is not necessary to determine whether personal jurisdiction over Acuity would comply with the Due Process Clause because Acuity's activities in New York do not constitute the transaction of business as defined by N.Y. CPLR § 302(a).

B.    *McGuire*

The complaint alleges also that Matthew McGuire, a Canadian domiciliary, is subject to personal jurisdiction in this Court.  Navaera maintains that McGuire is Acuity's *alter ego* because he is Acuity's principal, sole employee, and sole shareholder.[76]  Navaera therefore contends that McGuire has "transacted business" in his personal capacity in New York pursuant to the long arm statute.  That contention, however, is without merit.

Navaera must demonstrate that there exists a "substantial nexus" between McGuire's activities in New York and its causes of action.[77]  Thus McGuire's employment by Deloitte Canada and proposal to "service a major New York financial institution," which bear no relationship to the Navaera agreement, are irrelevant.  McGuire's contacts with New York that bear a nexus to Navaera's claims are coterminous with Acuity's.  Those contacts are insufficient to support a finding of personal jurisdiction.  It therefore is unnecessary to address whether Navaera sufficiently has pleaded that McGuire is Acuity's *alter ego* such that he may be subject to liability in his personal capacity.

Navaera has failed also to make a *prima facie* showing of personal jurisdiction over McGuire.[78]

---

[76]      Amend. Cpt. ¶ 13.

[77]      *See Grand River Enters.*, 425 F.3d at 165.

[78]      It is not necessary to address defendants' motion insofar as it seeks dismissal for improper venue or failure to state a claim upon which relief can be granted because there is no personal jurisdiction over defendants.

17

*Conclusion*

For the foregoing reasons, defendants' motion to dismiss the complaint [DI 5] is granted on the ground that the Court lacks personal jurisdiction over defendants.

SO ORDERED.

Dated:          November 3, 2009

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)